IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS ALAN BANDELOW, | CASE NO. 1:22-cv-2245 |
| Plaintiff, | DISTRICT JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Thomas Alan Bandelow filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In March 2020, Bandelow filed an application for Disability Insurance Benefits alleging a disability onset date of August 3, 2017,[1] and claiming he was disabled due to lumbar disc herniation, ligament sprain, and

---

[1]  "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

radiculopathy; degenerative disc disease; right foot and ankle sprain; insomnia; and chronic back pain. Tr. 223, 261. The Social Security Administration denied Bandelow's application and his motion for reconsideration. Tr. 70, 80. Bandelow then requested a hearing before an Administrative Law Judge (ALJ). Tr. 104.

In July 2022, an ALJ held a hearing. Bandelow and a vocational expert testified. Tr. 31–69. The next month, the ALJ issued a written decision finding that Bandelow was not disabled. Tr. 15–26. The ALJ's decision became final on October 17, 2022, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Bandelow filed this action on December 13, 2022. Doc. 1. He asserts the following assignments of error:

> 1. The ALJ erred at Step Three of the Sequential Evaluation when he failed to find that Plaintiff satisfied the criteria of Listing 1.15 in combination with his related pain and obesity.

> 2. The ALJ erred at Steps Four and Five of the Sequential Evaluation in that substantial evidence did not support the RFC finding that Plaintiff only needed an assistive device for ambulating.

Doc. 7, at 1.

**Evidence**

*Personal and vocational evidence*

Bandelow was born in 1978 and was 39 years old on his alleged disability onset date. Tr. 25. He has at least a high school education and last worked in 2017 as a "print press operator." Tr. 43–44.

*Medical evidence*[2]

In August 2017, Bandelow was injured at work and sprained his right foot and ankle. Tr. 663.  He received workers' compensation benefits for those injuries. Tr. 663. In June 2018, Bandelow added a lumber spine strain to his workers compensation claim. Tr. 666.

In early 2018, Bandelow received massage and rehabilitation therapies for right foot and ankle muscle tightness and stiffness and his reports of right hip pain traveling down to his calf. Tr. 325–27.

In August 2018, Bandelow added the conditions "lumbar disc herniation" and lumbar radiculopathy to his workers' compensation claim. Tr. 668.

In October 2018, Bandelow saw a chiropractor for an evaluation. Tr. 614–16. Bandelow's exam findings showed that Bandelow had slow, guarded movements of "the involved lumber spine" and right ankle. Tr. 615. His gait was "slow and steady, but cautious," and he "us[ed] a cane for stability." Tr. 615. In his lumber spine and right ankle, Bandelow had a limited range of motion, spasm, swelling, stiffness, and pain. Tr. 615. His left leg strength was slightly diminished. Tr. 615. The chiropractor diagnosed Bandelow with a lumbar "[s]prain/[s]train." Tr. 615.

---

[2]    The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

In November 2018, Bandelow went to the emergency room for right-sided lower back pain radiating down his right leg. Tr. 472. On exam, Bandelow had a normal range of motion, no edema, no sensory deficit, normal strength, and intact reflexes. Tr. 474–75. X-rays of his hip and pelvis were unremarkable. Tr. 477. Bandelow's symptoms "improved significantly" with medication and he "ambulated safely out of [the emergency room]" with a cane. Tr. 471, 475. The impression was right-sided lower back pain consistent with sciatica. Tr. 475. Contemporaneous chiropractic treatment records show that Bandelow had lower back pain, spasm, swelling, and reduced range of motion Tr. 612.

In December 2018, Bandelow had a physical therapy evaluation for his lower back and right leg pain. Tr. 517. Bandelow's exam findings showed normal reflexes and full leg strength. Tr. 518–19. Bandelow had tenderness in his lumbar spine with moderately limited ranges of motion and his legs were "severely tight." Tr. 519. He had positive straight leg raise and slump tests, indicating a neurological component to his condition. Tr. 519. Bandelow's physical therapy goals were to decrease pain, increase lumbar spine range of motion "to allow … improved performance of [activities of daily living]," and to increase leg flexibility. Tr. 517.

4

The same month, Bandelow saw a spine specialist. Tr. 530. The doctor's exam findings showed that Bandelow had an "antalgic gait with a cane,"[3] "very limited" lumbar range of motion, full leg strength, and intact reflexes. Tr. 532–33. The doctor ordered a lumbar MRI, which showed "right paracentral inferiorly directed extrusion at L5-S1 exerting mass effect on the traversing right S1 nerve root" and moderate degenerative changes at L4-5.[4] Tr. 534, 540.

In June 2019, Bandelow had an appointment at a chiropractic and rehabilitation office. Tr. 1156. Bandelow reported that after his injury he "ended up having to walk with a cane due to his right ankle pain," but that his right ankle felt better after therapy. Tr. 1156. Therapy hadn't improved his lower back pain. Tr. 1156. Bandelow participated in aquatic therapy twice a week and, since then, "he's been able to walk without a cane and has also lost weight." Tr. 1156. But then he developed right knee pain. Tr. 1156. An exam of Bandelow's right knee showed tenderness over the medial joint line and anterior knee into the patellar tendon and a limited range of motion. Tr. 1157.

---

[3]    An antalgic gait is an abnormal gait due to the person trying to avoid pain. *See* Dorland's Illustrated Medical Dictionary, 33rd Edition, 2020, at 96.

[4]    Vertebrae in a person's spine are given letter and number designations according to their location. The five vertebrae in the lower spine—the lumbar spine—are L1 through L5. *See* Thomas Scioscia, M.D., *Vertebrae in the Vertebral Column, Spine-health Resources*, https://www.spine-health.com/conditions/spine-anatomy/vertebrae-vertebral-column [https://perma.cc/R9MM-TBZT]. The five vertebrae at the bottom of the spine—in the sacrum—are labeled as S1 through S5. Thomas Scioscia, M.D., *Sacrum (Sacral Region), Spine-health Resources*, https://www.spine-health.com/conditions/spine-anatomy/sacrum-sacral-region [https://perma.cc/S2BR-RBTB].

Bandelow had spasms in his right leg muscles. Tr. 1157. Various manual tests indicated increased lower back pain with internal and external rotation of the hip and increased knee pain. Tr. 1157. Bandelow's gait was "moderately antalgic." Tr. 1157.

In August 2019, Bandelow was re-evaluated for chiropractic treatment. Tr. 617. The evaluator observed that Bandelow walked with a "slow, altered gait favoring the low[er] back." Tr. 617. He "us[ed] a cane for ambulation." Tr. 617. Bandelow had a limited range of motion in his lumbar spine and decreased leg strength, rated four out of five. Tr. 618. Manual testing showed pain, spasms, and strong trigger points. Tr. 617–18.

In February 2020, Bandelow saw a physician's assistant for chronic back pain. Tr. 554. Bandelow complained of pain at night and difficulty sleeping. Tr. 554. He saw a chiropractor once a month. Tr. 554. Bandelow didn't want to take narcotics or daily non-steroidal anti-inflammatories and he didn't want injections. Tr. 554. He requested muscle relaxers. Tr. 554. Upon exam, Bandelow "walk[ed] with a cane." Tr. 555. He had normal pulses and no edema in his legs and a decreased range of motion in his back. Tr. 555.

In June 2020, Bandelow visited his chiropractor. Tr. 638. Bandelow walked without a cane and had a "strong limp." Tr. 638. He said that he "would normally be using [his cane]," but it broke. Tr. 638.

In October 2020, Bandelow had a psychological consultative exam at the state agency's request. Tr. 645. After the exam, the doctor concluded that there

was "no diagnosis" and that Bandelow had no impairments in four areas of work-related mental abilities, including the ability to maintain attention, concentration, persistence, and pace. Tr. 647.

In May 2022, Bandelow saw Dr. Deborah Koricke for a psychological consultative exam at the Bureau of Workers' Compensation's request. Tr. 1167. Dr. Koricke diagnosed Bandelow with unspecified anxiety disorder and listed the following symptoms that Bandelow experienced: worry about his future; impaired sleep and daily motivation; and feeling hopeless, helpless, and irritable. Tr. 1173.

In June 2022, Bandelow had a right knee x-ray, which showed decreased joint space in the medial tibiofemoral area and over the inferior patellofemoral region. Tr. 1153. Bandelow had mild to moderate arthritic changes over the distal medial and lateral femur, proximal medial tibia, and superior posterior patella. Tr. 1153. Also present was soft tissue swelling over the medial knee region. Tr. 1153. The same day, Bandelow's chiropractor note indicated that Bandelow had or reported moderate to severe pain, stiffness, paresthesia, spasm, decreased range of motion in his lumber spine, and reduced strength in his right leg. Tr. 1146.

*State agency opinions*[5]

In July 2020, James Cacchillo, M.D., reviewed Bandelow's record. Tr. 76–77. As for Bandelow's residual functional capacity (RFC),[6] Dr. Cacchillo found that Bandelow could perform light exertional work—he could stand, walk, and sit for about six hours in an eight-hour day and lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 76. Dr. Cacchillo also assessed postural limitations. Tr. 76. In February 2021, Linda Hall, M.D., reviewed Bandelow's record and adopted Dr. Cacchillo's opinion, except that Dr. Hall assessed greater postural limitations. Tr. 84–86.

*Hearing testimony*

Bandelow, who was represented by counsel, testified at the telephonic administrative hearing held in July 2022. Bandelow stated that he lives with his wife and that they try to go out somewhere every day. Tr. 41–43. Bandelow likes to drive but said that his wife usually drives. Tr. 42. Bandelow can't drive

---

[5]    When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[6]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

"long distances" but can drive "short distances," which he described as a 15- to 20-minute trip. Tr. 42–43.

When asked why he couldn't work, Bandelow stated that he has back and leg pain. Tr. 45. His sleep is "terrible"—he is always turning from side to side and sometimes he can't sleep. Tr. 45. He gets cramps and sometimes he stands up for about five minutes "just to try to get some relief." Tr. 45. At most, Bandelow sleeps for one hour at a time and no more than six hours in a 24-hour period. Tr. 58. His impaired sleep causes problems focusing. Tr. 58.

Bandelow explained that he has pain in his lower back and "the nerve shoots down in [his] thigh muscle and … calf" of his right leg. Tr. 46. Bandelow rated his pain level as a six out of ten. Tr. 47. He doesn't take pain medication but does take Aleve and Advil. Tr. 47. Neither helps much, but he feels like he sleeps better when he takes Aleve. Tr. 47. Bandelow said that he can sit for about five to ten minutes. Tr. 47. He can lift four or five pounds, and maybe ten, but it hurts. Tr. 49–50. He can stand for eight to ten minutes. Tr. 48. When asked if he stood "with or without the use of a cane," Bandelow answered, "without the use of a cane." Tr. 48. He said that there is always "a chair there or the countertop or something" to lean on. Tr. 48. He estimated that he could walk for five minutes if he had to, using a cane. Tr. 49. But with the therapy he's doing, Bandelow explained, he tries not to use a cane so as to retrain his muscle memory. Tr. 49.

Bandelow also said that his right knee "is starting to wear out." Tr. 56. His providers believe that his knee problem is caused by the effect that Bandelow's back injuries have on his gait. Tr. 56. Bandelow stated that overall, his condition has worsened. Tr. 57. Swimming and exercising in the pool help. Tr. 57. He finds it much easier to walk in the pool and stretch. Tr. 57. When asked if he could perform a job that required him to sit for most of the day, Bandelow said no—he "wouldn't be able to sit down nonstop like that." Tr. 60.

The ALJ discussed with the vocational expert Bandelow's past relevant work as a machine operator and instant press operator. Tr. 62–63. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Bandelow could perform Bandelow's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 63–64. The vocational expert answered that such an individual could not perform Bandelow's past work but could perform the following jobs: touchup screener, addresser, and cable worker. Tr. 63, 65.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since August 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant had the following severe impairments: right paracentral inferiorly directed extrusion at the L5-S1 exerting mass effect on the traversing right S1 nerve root and moderate L4-5 degenerative changes with radiculopathy, decreased joint space over the inferior patellofemoral region and mild to moderate arthritis changes over the distal medial and lateral femur, proximal medial tibia, and superior posterior patella in the right knee; obesity, and unspecified anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: the claimant can occasionally operate right foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; requires a cane to ambulate; has the ability to understand, remember, apply information, concentrate, persist, and maintain pace to perform simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work related decisions in using his judgment and dealing with changes in the work setting; and is able to frequently interact with supervisors, coworkers, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [i]n … 1978 and was 39 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The

11

claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. 17–26.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1.    Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2.    Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3.    Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4.    What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The

claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the

conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

1.    *The ALJ did not err at step three*

Bandelow argues that the ALJ erred at step three because he failed to find that Bandelow satisfied the criteria of Listing 1.15, *Disorders of the skeletal spine resulting in compromise of a nerve root*. Doc. 7, at 7.

At step three of the disability evaluation process, a claimant will be found disabled if his or her impairments meet or equal one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of establishing that any condition meets or equals a listing. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). A claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id.* at 728 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). "Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing" and a claimant "must satisfy all the criteria to 'meet'

15

the listing." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "[A] claimant is also disabled if her impairment is the *medical equivalent* of a listing[.]" *Id.* There is no heightened articulation standard at step three. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

Bandelow rehashes his medical evidence and concludes, "[r]ather than applying this medical evidence to the relevant Listing, the totality of the ALJ's Step Three analysis was a recitation of the requirements of the Listing." Doc. 7, at 9. Therefore, Bandelow asserts, the ALJ "failed to support his conclusion at Step Three of the Sequential Evaluation with substantial evidence necessitating either a reversal or remand of this matter." *Id.*

Bandelow is mistaken. To satisfy Listing 1.15, a claimant must need either (1) an assistive device requiring the use of both hands or (2) a one-handed assistive device and an inability to use the free hand. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.15D. A claimant can also satisfy Listing 1.15 if he or she can't use either arm. *Id.* The ALJ accurately stated that there was no evidence showing that Bandelow met any of those requirements. Tr. 18. Bandelow hasn't identified evidence in the record showing otherwise. Indeed, at the hearing, Bandelow's attorney conceded that Bandelow didn't satisfy the requirements for Listing 1.15. Tr. 39.

Next, Bandelow argues that the ALJ "failed to account for the combination of his obesity and related impairments." Doc. 7, at 10. But he concedes that the ALJ considered his obesity at step three. *Id.* The ALJ

16

concluded that Bandelow's obesity didn't cause "another impairment or combination of impairments to rise to listing-level severity." Tr. 18. Bandelow doesn't explain why he believes that finding is erroneous. He cites a 2018 treatment note stating that Bandelow's "added weight had caused the pain in his foot and ankle to increase," Doc. 7, at 10, but doesn't explain how that evidence indicates that Bandelow needed a two-handed assistive device or couldn't use at least one arm. Bandelow's step three challenge fails.

### 2. *Bandelow's symptoms argument is forfeited*

In the section of his brief challenging the ALJ's finding that Bandelow didn't satisfy Listing 1.15, Bandelow cites his pain symptoms and concludes, "[d]espite the fact that the record, as detailed above, provided medical support for [Bandelow's] continuing back pain and related lower extremity difficulties, the ALJ failed to include any related limitations in his RFC." Doc. 7, at 12.

This argument is forfeited. First, Bandelow conflates two distinct steps into one argument, which his counsel has been warned to avoid. *See, e.g., Gottron v. Comm'r of Soc. Sec.*, No. 3:22-cv-123, 2022 WL 17717498, at *8, n.17 (N.D. Ohio Oct. 5, 2022) (advising counsel that she has been previously warned that her failure to "refrain from combining disparate challenges and arguments of the sequential disability evaluation together" may result in the Court deeming the argument forfeited), *report and recommendation adopted*, No. 3:22-cv-00123, 2023 WL 4285132 (N.D. Ohio June 30, 2023). Second, Bandelow's broad, conclusory statement isn't sufficiently developed. *See*

17

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

In any event, the ALJ specifically cited Bandelow's pain complaints, leg issues, problems concentrating, and cane use when explaining the RFC limitations. Tr. 23. So Bandelow's assertion that the ALJ "failed to include any related limitations in his RFC" for to account for those problems is baseless.

3. *The ALJ did not err when evaluating Bandelow's need for a cane*

The ALJ's RFC included a restriction that Bandelow needed a cane to ambulate. Tr. 20. Bandelow asserts that "the medical evidence documented that [Bandelow] also needed assistance while standing." Doc. 7, at 14.

If an assistive device is "not a necessary device for [a] claimant's use, it cannot be considered an exertional limitation that reduce[s] [the claimant's] ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). To be considered a restriction or limitation, an assistive device "must be so necessary that it would trigger an obligation on the part of the Agency to conclude that the [device] is medically necessary." *Murphy v. Astrue*, No. 2:11-cv-114, 2013 WL 829316, at *10 (M.D. Tenn. March 6, 2013) (citations omitted). To be *medically necessary*, the record must reflect "more than just a subjective desire on the part of the plaintiff as to the use of a[n] [assistive device]." *Id.*

(citation omitted). And there must be medical documentation "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Soc. Sec. Ruling 96-9p, 1996 WL 374185, *7 (S.S.A. July 2, 1996); *see Golden v. Berryhill*, No. 1:18-cv-636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("a cane prescription [that] does not indicate 'the circumstances for which [the cane] is needed,' ... does not fulfil the requirements under SSR 96-9p"), *report and recommendation adopted sub nom. Golden v. Comm'r of Soc. Sec.*, No. 1:18-cv-636, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019).

"If the ALJ does not find that such device would be medically necessary, then the ALJ is not required to pose a hypothetical to the V[ocational] E[xpert]" which includes the use of an assistive device. *Murphy*, 2013 WL 829316, at *10 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Generally, an ALJ's finding that an assistive device is not *medically necessary* is error when the claimant was prescribed an assistive device and the ALJ didn't include the use of the device in the RFC without providing an explanation for omitting it. *Cruz-Ridol v. Comm'r of Soc. Sec.*, No. 1:17-cv-1075, 2018 WL 1136119, at *15 (N.D.Ohio Feb. 12, 2018) (citing *Watkins v. Comm'r of Soc. Sec.*, No. 1:16–cv–2643, 2017 WL 6419350, at *11 (N.D. Ohio Nov. 22, 2017)), *report and recommendation adopted*, No. 1:17-cv-1075, 2018 WL 1083252 (N.D. Ohio Feb. 28, 2018).

19

Bandelow argues that the "medical evidence" established his need for a cane while standing. Doc. 7, at 15. But he doesn't cite medical evidence saying so. The evidence he does cite shows only that he used a cane while walking. Doc. 7, at 14 (citing 378 ("[Bandelow] went for a short walk yesterday using his cane"), 414 ("Has numb[n]ess and tingling that runs down both legs that makes it difficult to walk. Has been using a cane"), 532 ("Gait: antalgic with a cane"), 555 ("[Bandelow] walks with a cane"), 615 ("Gait is slow and steady, but cautious. [Bandelow] is using a cane for stability"), 617 ("[Bandelow] is using a cane for ambulation"), 646 ("[Bandelow] walked with the aid of a cane on the day of the visit"), Tr. 1156 ("[Bandelow] ended up having to walk with a cane due to his right ankle pain.")). Even if the treatment note stating that Bandelow used a cane "for stability" could be construed as meaning "stability while standing," Tr. 615, neither that record nor any other reflects "more than just a subjective desire on the part of [Bandelow] as to the use of a cane." *Murphy*, No. 2:11-cv-114, 2013 WL 829316, at *10. Because Bandelow hasn't shown that it was *medically necessary* that he use a cane for standing, the ALJ didn't err by not including such a restriction in the RFC. *See id*.

Finally, even if the ALJ erred by not including a cane for standing in the RFC, any error would be harmless because the vocational expert testified that an individual could perform the jobs he identified even if the individual needed a cane "for balance as well as ambulation." Tr. 65–66.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: August 8, 2023

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).