UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS ALAN BANDELOW, | ) | CASE NO.  1:22-cv-02245 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge James E. Grimes ("R&R") (Doc. No. 10) recommending that the decision of the Commissioner be affirmed.  Plaintiff filed his objection (Doc. No. 14), and Defendant filed responses urging the Court to adopt the R&R (Doc. Nos. 12, 13).  For the reasons that follow, the objection is OVERRULED, the R&R is ACCEPTED, and the decision of the Commissioner is AFFIRMED.

I. **Background**

In March 2020, Plaintiff filed an application for Disability Insurance Benefits.  (Doc. No. 10 at 1235.)[1]  This claim was denied both upon initial consideration and reconsideration.  (Doc. No. 7 at 1204.)  Plaintiff filed a Request for Hearing, which was granted.  A hearing was held on July 11, 2022, before Administrative Law Judge ("ALJ") William Leland.  (*Id.*)  The ALJ ruled against Plaintiff on August 10, 2022.  (*Id.*)  The Appeals Council declined to review Plaintiff's case on October 17, 2022, making the ALJ's decision final.  (*Id.*)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

Plaintiff timely commenced this action on December 13, 2022. (Doc. No. 1.) On April 27, 2023, Plaintiff filed a brief on the merits. (Doc. No. 7.) On June 7, 2023, Defendant filed its brief on the merits. (Doc. No. 9.) On August 8, 2023, the Magistrate Judge issued his R&R. (Doc. No. 10.) Plaintiff timely filed an objection on August 22, 2023. (Doc. No. 14.) Defendant responded to Plaintiff's objection on August 22, 2023. (Doc. Nos. 12, 13.)

## II.  Standard of Review

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (Citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (flush language).

For present purposes, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.
2. If the claimant is not doing substantial gainful activity, his impairment must be

      severe before he can be found to be disabled.  To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).  During the first four steps, the claimant has the burden of proof.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commission at step five.  *Id.*

      The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

      If substantial evidence supports the Commissioner's finding that the claimant is not

disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).  A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence.  *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 WL 799749, at *2 (6th Cir. 2000) (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

### III.  Discussion

#### A.  Record Before the ALJ

In March 2020, Plaintiff filed an application for Disability Insurance Benefits, claiming he was disabled due to lumbar disc herniation, ligament sprain, and radiculopathy, degenerative disc disease, right foot and ankle sprain, and chronic back pain.  (Doc. No. 10 at 1235-36.)  Plaintiff, who worked as a print press operator, was injured at work in August 2017, spraining his right foot and ankle.  (Doc. No. 6 at 685.)  Plaintiff received workers' compensation for this injury.  (*Id.*)  In February 2018, Plaintiff received massage and rehabilitation therapies for stiffness, muscle tightness, and pain traveling down his right foot and ankle.  (*Id.* at 347-49.)  In June 2018, Plaintiff added lumbar spine strain to his workers' compensation claim.  (*Id.* at 688.)  In August 2018, Plaintiff added lumbar disc herniation and lumbar radiculopathy to his claim.  (*Id.* at 689.)

When Plaintiff saw a chiropractor in October 2018, he exhibited "slow guarded movements of the involved lumbar spine, and right ankle." (*Id.* at 637.)  The chiropractor described Plaintiff's gait as "slow and steady, but cautious," and noted Plaintiff "is using a cane

4

for stability." (*Id.*)  The chiropractor further observed that Plaintiff's right ankle showed "localized swelling, pain, spasms and decreased AROM [active range of motion], as well as positive orthopedic testing." (*Id.*)  Ultimately, the chiropractor diagnosed Plaintiff with lumbar sprain/strain.  (*Id.*)

In November 2018, Plaintiff went to the emergency room for "right sided low back pain which radiates down the posterior aspect of the right leg." (*Id.* at 494.)  The doctor concluded that "history and physical examination is consistent with sciatica" and that his "symptoms have improved significantly with the Toradol injection and muscle relaxants." (*Id.* at 497.)  Plaintiff was discharged with verbal and written instructions regarding his diagnosis and the need for follow up.  (*Id.*)  Plaintiff's appointments with his chiropractor from the same time period show that he had lower back pain, spasms, swelling, and a reduced range of motion.  (*Id.* at 633-35.)

At his physical therapy evaluation in December 2018, Plaintiff showed normal reflexes, full leg strength, "severely tight" leg flexibility and moderately limited ranges of motion.  (*Id.* at 539-41.)  Plaintiff also saw a spine specialist around this time, where he showed an "antalgic gait with a cane," a "very limited" lumbar range of motion, full leg strength, and intact reflexes.  (*Id.* at 554.)  At this point, the doctor ordered Plaintiff to receive lumbar spine x-rays, a lumbar spine MRI, physical therapy and a medrol dose pack.  (*Id.* at 556.)

In June 2019, Plaintiff reported having to "walk with a cane due to his right ankle pain" but that therapy helped.  (*Id.* at 1178.)  Since starting aquatic therapy, Plaintiff stated he was "able to walk without a cane and [] also lost weight." (*Id.*)  However, Plaintiff reported that therapy was not improving his lower back pain and that he had developed right knee pain.  (*Id.*)  Upon examination, Plaintiff's right knee showed tenderness over the medial joint line and anterior knee into the patellar tendon and a limited range of motion with spasms in his right leg

5

muscles.  (*Id.* at 1179.)  At this time, Plaintiff's gait was noted to be "moderately antalgic."  (*Id.*)

In August 2019, Plaintiff was re-evaluated by his chiropractor.  The evaluator noted that Plaintiff walked with a "slow, altered gait favoring the lower back" and "used a cane for ambulation."  (*Id.* at 639-40.)  Plaintiff exhibited a limited range of motion in his lumbar spine, decreased leg strength, pain, spasms and strong trigger points.  (*Id.*)  The chiropractor recommended continuing chiropractic care and monitoring and noted that "[p]atient is [in] extreme pain, severely limited."  (*Id.* at 640.)

In February 2020, Plaintiff saw a physician's assistant for chronic back pain, complaining of pain at night and difficulty sleeping.  (*Id.* at 576.)  The physician's assistant noted that Plaintiff walked with a cane, had normal pulses, no edema in his leg, and a decreased range of motion in his back.  (*Id.*)  Plaintiff stated that he was seeing a chiropractor once a month and did not want to take narcotics or daily non-steroidal anti-inflammatories, nor did he want to receive injections.  (*Id.*)  Instead, Plaintiff requested muscle relaxers.  (*Id.*)

In June 2020, Dr. James Cacchillo, M.D., reviewed Plaintiff's record for Plaintiff's residual function capacity ("RFC") and concluded that Plaintiff could perform light work, meaning he could stand, walk, and sit for about six hours in an eight-hour day and lift and carry 20 pounds occasionally and 10 pounds frequently.  (*Id.* at 98.)  Dr. Cacchillo also assessed Plaintiff's postural limitations, finding that he did have frequent limitations for climbing ramps/stairs, stooping and kneeling, and occasional limitations for climbing ladders/ropes/scaffolds, crouching, and crawling.  (*Id.*)

In October 2020, at the state agency's request, Plaintiff underwent a psychological consultative exam.  (*See id.* at 667.)  The examining doctor concluded that there was "no diagnosis" and that Plaintiff did not have impairments the four areas of work-related mental

6

abilities. (*Id.* at 669.)

In February 2021, Dr. Linda Hall, M.D. reviewed Plaintiff's record and adopted Dr. Cacchillo's opinion on Plaintiff's RFC but assessed greater postural limitations. (*Id.* at 103-09.)

In May 2022, at the Bureau of Workers' Compensation's request, Plaintiff underwent a psychological consultative exam. (*Id.* at 1189.) The examining doctor diagnosed Plaintiff with an unspecified anxiety disorder and recorded Plaintiff's symptoms, including worry about his future, impaired sleep and daily motivation, and feelings of hopelessness, helplessness, and irritation. (*Id.* at 1192.)

In June 2022, Plaintiff's right knee was x-rayed, showing decreased joint space in the medical tibiofemoral area and over the inferior patellofemoral region. (*Id.* at 1175.) Plaintiff also showed mild to moderate arthritic changes over the distal medial and lateral femur, proximal medial tibia, and superior posterior patella, as well as soft tissue swelling over the medial knee region. (*Id.*) Plaintiff's chiropractor noted Plaintiff reported moderate to severe pain, stiffness, paresthesia, spasm, decreased range of motion in his lumbar spine, and reduced strength in his right leg. (*Id.* at 1168.)

At the telephonic administrative hearing in July 2022, Plaintiff testified as to his medical and mental conditions, personal history, and previous employment. (*See id.* at 55-83.) A vocational expert also testified at the hearing, opining that Plaintiff could not perform his past work, but would be able to perform jobs like touchup screener, addresser, and cable worker. (*Id.* at 83-88.)

### B. ALJ's Conclusion

Based on this record, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since August 3, 2017, the alleged onset date." (*Id.* at 40.) The ALJ also found

7

that Plaintiff had severe impairments that include:

> right paracentral inferiorly directed extrusion at the L5-S1 exerting mass effect on the traversing right S1 nerve root and moderate L4-5 degenerative changes with radiculopathy, decreased joint space over the inferior patellofemoral region and mild to moderate arthritis changes over the distal medial and lateral femur, proximal medial tibia, and superior posterior patella in the right knee, obesity, and unspecified anxiety disorder.

(*Id.*)  The ALJ also concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I."  (*Id.*)  After reviewing Plaintiff's medical record, the ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)" with certain additional limitations.  (*Id.* at 42.)  The ALJ further concluded that Plaintiff is "unable to perform any past relevant work."  (*Id.* at 47.)  The ALJ noted that Plaintiff's age range had changed since the onset date to a younger individual age 45-49 and that Plaintiff has at least a high school education.  (*Id.*)  Lastly, the ALJ concluded that transferability of job skills was not material to the determination of disability and that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.*)

### C. The Magistrate Judge's Report and Recommendation

The R&R correctly noted that its review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  (*See* Doc. No. 10 at 1248.)  The R&R also stated the five-step process ALJs must use to determine whether a claim is entitled to SSI or disability insurance benefits.  (*See id.* at 1247.)  The R&R likewise detailed and evaluated Plaintiff's challenges to the Commissioner's determination before concluding that there is substantial evidence to support the ALJ's decision.  (*Id.* at 1249-54.)

8

> Specifically, Plaintiff raised two arguments on appeal: "
>
> (1) The ALJ erred at Step Three of the sequential evaluation when he failed to find that Plaintiff satisfied the criteria of Listing 1.15 in combination with his related pain and obesity; (2) The ALJ erred at Steps Four and Five of the sequential evaluation in that substantial evidence did not support the RFC finding that Plaintiff only needed an assistive device for ambulating."

(Doc. No. 8 at 1203.) Regarding Plaintiff's first argument, the R&R highlighted that "[t]he ALJ accurately stated that there was no evidence showing that [Plaintiff] met any of" the requirements of Listing 1.15. (Doc. No. 10 at 1250.) The R&R further concluded that Plaintiff "doesn't explain why he believes that" the ALJ's finding that Plaintiff's "obesity didn't cause 'another impairment or combination of impairments to rise to listing-level severity'" is erroneous. (*Id.* at 1251.) The R&R also noted that Plaintiff's arguments regarding his symptoms were forfeited, insufficiently developed, and baseless in light of the ALJ's discussion. (*Id.* at 1251-52.) Lastly, the R&R stated that Plaintiff's arguments regarding his need for a cane while standing did not warrant overturning the ALJ's decision because (1) Plaintiff failed to cite medical evidence and (2) "the vocational expert testified that an individual could perform the jobs [] identified even if the individual needed a cane 'for balance as well as ambulation.'" (*Id.* at 1254.)

### D. *De Novo* Review

In his objection, Plaintiff claims that the R&R's conclusion that the ALJ did not err at Step Three of the sequential evaluation was factually and legally incorrect. (Doc. No. 14 at 1262-63.) Plaintiff asserts that while the ALJ's determination that Plaintiff "could not satisfy the criteria of Listing 1.15 as he did not need an assistive device requiring the use of both hands" was "factually correct," the ALJ's finding at Step Three was nonetheless factually and legally incorrect. (*Id.*) Specifically, Plaintiff argues that the ALJ failed "to consider the combination of [Plaintiff's] obesity, pain and musculoskeletal impairments as equaling the Listing was in error"

9

under Social Security Ruling 19-2p ("SSR 19-2p").  (*Id.*)

At Step Three of the sequential evaluation process, a claimant bears the burden of demonstrating that his or her impairments meet or equal one of the listings in the Listing of Impairments found in Subpart P, Appendix I to 20 C.F.R. 404.1520(a)(4)(iii).  *Thacker v. Soc. Sec. Admin.* 93 F. App'x 725, 727-28 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)).  If the claimant meets all the criteria for a listed impairment, he or she is disabled; otherwise, the evaluation process proceeds to Step Four.  *Miley v. Comm'r of Soc. Sec.*, No. 1:20-cv-2550, 2021 WL 6064754, at *10 (N.D. Ohio Dec. 22, 2021).

Obesity is not a listed impairment, but SSR 19-2p "provides guidance on how [the SSA] establish[es] that a person has a medically determinably impairment of obesity, and how [the SSA evaluate[s] obesity in disability claims."  SSR 19-2, 84 Fed. Reg. 22924, 22924 (May 20, 2019); *see also Baumiller v. Comm'r of Soc. Sec.*, 627 F.Supp.3d 855, 911 (N.D. Ohio 2022).  Specifically, SSR 19-2p "directs the ALJ to consider the claimant's obesity in combination with other impairments, at all stages of the sequential evaluation."  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016).  As such, the ALJ is required to "consider obesity and explain the conclusion reached regarding its effects."  *See Johnson v. Comm'r of Soc. Sec.*, No. 1:22-CV-02272, 2023 WL 8283922, at *13 (N.D. Ohio Nov. 9, 2023).

The ALJ's Step Three analysis met the requirements under SSR 19-2p.  As an initial matter, Plaintiff concedes that his musculoskeletal impairments do not meet or equal one of the listings in Subpart P, Appendix I because he does not use a mobility device that involves the use of both of his hands.  (Doc. No. 14 at 1262; *see also* Doc. No. 6 at 61-62.)  However, the ALJ did not conclude, based on this admission alone, that Plaintiff did not meet the requirements for

10

disability. Instead, the ALJ noted that while obesity is not a listed impairment, "the functional limitations caused by the medically determinable impairment of obesity, alone or in combination with other impairment(s) may medically equal a listing." (Doc. No. 6 at 40.) The ALJ further stated that "obesity may or may not increase the severity of functional limitations of other impairments." (*Id.*) With respect to Plaintiff, the ALJ noted that "[s]ymptoms of the claimant's impairments were aggravated by obesity at a height of approximately 74 inches and weight of approximately 250-285 pounds." (*Id.* at 44.) The ALJ also found that "due to the combined effects of the claimant's reduced lower extremity strength, abnormal gait, and obesity . . . the claimant is limited to sedentary exertion work." (*Id.* at 45.) Taking these facts into consideration, the ALJ concluded that "[u]pon review of the facts of this case, [Plaintiff's] obesity does not cause another impairment or combination of impairments to rise to listing-level severity." (*Id.* at 40.)

Plaintiff's does not offer any explanation for why this conclusion was erroneous, but instead repeats that "Plaintiff's obesity combined with his musculoskeletal impairments imposed greater functional limitations." (Doc. No. 14 at 1262.) Courts have routinely held that analyses like the ALJ's are sufficient. *See Johnson*, 2023 WL 8283922, at * 13 (holding that "[r]eading the ALJ's decision as a whole and with common sense, the ALJ's decision reflects that he considered [claimant's] obesity and its limiting effects"); *see also Miley*, 2021 WL 6064754, at *10 (holding that the ALJ's analysis of obesity "was sufficient consideration to comply with SSR 19-2p at Step Three").

In sum, the Court finds that the ALJ applied the correct legal standards and that the recommendations in the R&R are supported by substantial evidence.

11

## IV. <u>Conclusion</u>

For those reasons, Plaintiff's objection is OVERRULED, the R&R is ACCEPTED, and the Commissioner's decision is AFFIRMED. This case is closed.

**IT IS SO ORDERED.**

Date: February 8, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE